FEDERAL COMPRESS & WAREHOUSE COMPANY *v.* PARROTT.

Opinion delivered June 9, 1930.

*Dudley & Dudley,* for appellant.

*Richardson & Richardson, H. L. Ponder* and *Smith & Blackford,* for appellee.

MEHAFFY, J. Appellee brought suit in the Lawrence Circuit Court to recover damages for an injury received

while in the employ of appellant. The appellee was employed by the appellant as a tie man, but it was his duty to help load cotton on the cars and to do any work which he was directed to do. Appellant provided what it called a "gang plank," one end of which rested on the platform and the other end was in the door of the car into which the cotton was being loaded. This gang plank, which was iron, was about four feet long and three feet wide. The bale of cotton was placed on a truck and carried on said truck from the cotton shed or platform over the gang plank into the car. The gang plank slipped from the car door, causing appellee to fall and injuring him. It is alleged that appellant was negligent in not making the gang plank secure, and that this negligence was the cause of appellee's injury. The appellant contends that the condition of the plank and the danger was obvious, and that appellee assumed the risk. The appellee and seven or eight other employees of appellant were loading bales of cotton, conveying the cotton from the warehouse to the car on trucks. Each truck carried one bale. The appellee testified that it was the duty of the car man to fasten the gang plank, and that it was not his duty to inspect it. There is evidence tending to show that one of the loaders would place the gang plank and also evidence tending to show that the plank should have been nailed. The undisputed evidence shows that some one other than appellee had placed the plank, and it was done before appellee began work at this place. Appellee worked at another place in the forenoon tying cotton. They were loading the car when appellee went there to work. The undisputed evidence shows that the plank had been placed and employees were loading the cotton on the car when appellee went there to work. He had no opportunity to inspect the plank or to find out whether it was securely fastened or not. One truck was immediately behind another, and there were seven or eight engaged in loading the cotton. If the plank had been securely fastened, it would not have fallen. All the witnesses testify that, if it was raining or

damp, or if the car door was higher or lower than the platform, it was necessary to nail the gang plank. The evidence is in conflict as to whether the car door was higher than the platform. If it was higher, the gang plank should have been nailed to prevent it from slipping. The undisputed evidence shows it was not nailed. Appellant contends earnestly that the condition and danger was obvious, and that appellee assumed the risk.

Attention is called to many decisions of this court discussing the question of assumed risk and holding that where the danger arising from the negligence of the master is so apparent and obvious in its nature as to be at once discoverable to one of ordinary intelligence, an employee, by voluntarily undertaking to perform the work, assumes the hazards which exempt the employer from liability on account of injury to the employee. A servant assumes the usual and ordinary risks and dangers incident to his employment, but he does not assume the risk of injury from the negligence of his master or his fellow servants, unless he knows of the risk or unless the risk is open and obvious.

In this case the gang plank was not fastened or nailed, and both appellant's and appellee's witnesses say this is necessary unless the car door and platform are level with each other. The evidence on this question is not very strong, but there was sufficient evidence to submit the question to the jury.

The evidence shows clearly that the appellee worked tying cotton in the forenoon, and that when he got to the place where they were loading there were several others using trucks, and he was asked the question: "Did you know it was not fastened until it fell?" A. "No, sir, I did not." Q. "Was there anything there plain to you that you could see by looking that it was not fastened?" A. "No, sir, because when we went to work we grabbed up the trucks and just went at it. This car man, that is his place to always fasten the stage everywhere that I have worked." From the evidence in this case it appears that

the appellee had no opportunity to inspect and determine whether the gang plank was nailed or not, but he went to work immediately when he got to the place, and the plank fell with him when he had put in the second bale of cotton. The car was already practically full. A servant has a right to assume that the master has performed its duty. He has a right to assume that his fellow servants have performed their duty. Of course, if he had known that the gang plank was insecure and proceeded with his work, he would have been held to assume the risk, but there was no duty on him to inspect for the purpose of ascertaining whether or not somebody had been guilty of negligence. The negligence and danger was not obvious, and there is no assumption of risk by the servant of danger arising from the negligence of the master or his fellow servants, unless the risk and danger are open and obvious or unless he knows they exist. *Ark. Land & Lbr. Co.* v. *Fitzhugh*, 143 Ark. 122, 219 S. W. 1022; *Southern Cotton Oil Co.* v. *Spotts*, 77 Ark. 458, 92 S. W. 249; *St. L. I. M. & S. R. Co.* v. *Birch*, 89 Ark. 424, 117 S. W. 243; *Aluminum Co. of North America* v. *Ramsey*, 89 Ark. 522, 117 S. W. 568; *A. L. Clark Lbr. Co.* v. *Northcutt*, 95 Ark. 291, 129 S. W. 88; *C. R. I. & P. Ry. Co.* v. *Smith*, 107 Ark. 512, 156 S. W. 166; *Mosley* v. *Mohawk Lbr. Co.*, 122 Ark. 227, 183 S. W. 187; *Central Coal & Coke Co.* v. *Fitzgerald*, 146 Ark. 109, 225 S. W. 433; *Arkansas Cent. Ry. Co.* v. *Jackson*, 70 Ark. 295, 67 S. W. 757; *Wisconsin & Ark. Lbr. Co.* v. *Otts*, 178 Ark. 283, 10 S. W. (2d) 364.

Appellant also contends that the court erred in referring to the amount sued for. While this court has said it is unnecessary and improper for the trial court to make reference in an instruction to the amount sued for in the complaint, it has also said that where the instruction containing reference to the amount sued for also contains a direction to find only such amount as the evidence warrants, the giving of such instruction is not reversible error. It could not have been prejudicial in this case because the court instructed the jury that it would assess

appellee's damages at such a sum as it believed from a preponderance of the evidence would reasonably compensate him. The amount sued for was $3,000, and the verdict was for only one-fourth the amount. *St. L. I. M. & S. R. Co.* v. *Boyles,* 78 Ark. 374, 95 S. W. 783; *St. L. I. M. & S. R. Co.* v. *Snell,* 82 Ark. 61, 100 S. W. 67; *St. L. Sw. Ry. Co.* v. *Myzell,* 87 Ark. 123, 112 S. W. 203; *St. L. Sw. Ry. Co.* v. *Aydelotte,* 128 Ark. 479, 194 S. W. 873; *St. L. I. M. & S. R. Co.* v. *Holmes,* 96 Ark. 339, 131 S. W. 692.

Appellant does not urge any other objection to instructions.

If the apron was left unfastened or insecure by reason of the negligence of the master or a fellow servant, plaintiff would not have to exercise care to ascertain whether the master had performed its duty. The question of the master's negligence and the contributory negligence of the servant were questions of fact, and the jury has settled these questions against the appellant, and, while the evidence is not very strong, yet there is substantial evidence to support the verdict. This court does not pass upon the credibility of witnesses or the weight to be given to their testimony, and, as the verdict of the jury is supported by substantial evidence, the judgment is affirmed.